UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | | |
|---|---|---|---|
| RONALD BARKER, | ) | | |
| | ) | | |
| Petitioner | ) | | |
| | ) | | |
| vs. | ) | CAUSE NO. 3:08-CV-382 RM | |
| | ) | (Arising out of 3:06-CR-80(02) RM) | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent | ) | | |

OPINION and ORDER

At the conclusion of a two-day trial in October 2006, a jury convicted Ronald Barker of conspiracy to manufacture marijuana, manufacturing and possessing with intent to distribute marijuana, possessing a firearm in furtherance of manufacturing marijuana, possession of a firearm as an unlawful user of controlled substances, and maintaining a residence for the purpose of manufacturing marijuana. The jury also found that the government had proven the forfeiture count by a preponderance of the evidence. The court sentenced Mr. Barker to a total term of 420 months' imprisonment, to be followed by a four-year term of supervised release.

Mr. Barker's trial counsel filed a notice of appeal and an appellate brief pursuant to Anders v. California, 386 U.S. 738 (1967), identifying one potential non-frivolous issue for review: "whether the district court erred in determining [Mr. Barker's] sentence on the [18 U.S.C. §]924(c) count because the Sten machinegun was unable to be fired in the condition in which police found it, and

therefore should not have been considered a machinegun for purposes §

924(c)(1)(B)." United States v. Barker, 245 Fed. App. 556, 2007 WL 2332396, at

*1 (7th Cir. Aug. 16, 2007). The court of appeals agreed with this court's finding

that "'a machine gun that needs lubrication to function as it was designed to

function is no less a machinegun than a squeaky hinge is anything other than a

hinge,'" *id.*, and agreed with Mr. Barker's counsel that "any argument regarding

[Mr.] Barker's sentence under § 924(c) would be frivolous." *Id.* Counsel's motion

to withdraw his appearance on behalf of Mr. Barker was granted, and Mr. Barker's

appeal was dismissed on August 16, 2007. *Id.* at *2.

Mr. Barker filed a timely petition under 28 U.S.C. § 2255 on August 18,

2008, seeking to have his sentence vacated, set aside, or corrected based on his

claim that his counsel provided ineffective assistance at trial and on appeal. The

rules governing petitions filed under 28 U.S.C. § 2255 provide that once a motion

is filed,

> The motion, together with all the files, records, transcripts, and
> correspondence relating to the judgment under attack, shall be
> examined promptly by the judge to whom it is assigned. If it plainly
> appears from the face of the motion and any annexed exhibits and
> the prior proceedings in the case that the movant is not entitled to
> relief in the district court, the judge shall make an order for its
> summary dismissal and cause the movant to be notified.

Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District

Courts. A hearing isn't required if "the motion and files and records of the case

conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255. As

discussed below, Mr. Barker has alleged no facts that would entitle him to relief,

so no hearing is necessary to determine his § 2255 petition, <u>Menzer v. United States</u>, 200 F.3d 1000, 1006 (7th Cir. 2000), and his petition must be denied.

## I. LEGAL STANDARD

A person convicted of a federal crime may attack his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, the court had no jurisdiction to impose such sentence, the sentence exceeded the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A petition under § 2255 will not be allowed to substitute for an appeal or to advance arguments that could have been made earlier. *See* <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of *habeas corpus* will not be allowed to do service for an appeal." (*quoting* <u>Sunal v. Large</u>, 332 U.S. 174, 178 (1947))); <u>Young v. United States</u>, 124 F.3d 794, 796 (7th Cir. 1997) ("It is hornbook law that § 2255 cannot be used as a belated appeal."). A petitioner cannot bring constitutional claims he could have raised on direct appeal without showing good cause for and actual prejudice resulting from his failure to raise the claims on direct appeal. <u>Reed v. Farley</u>, 512 U.S. at 354. "[N]on-constitutional errors which could have been raised on appeal but were not, are barred on collateral review – regardless of cause and prejudice." <u>Arango-Alvarez v. United States</u>, 134 F.3d 888, 891 (7th Cir. 1998) (*quoting* <u>Bontkowski v. United States</u>, 850 F.2d 306, 313 (7th Cir. 1988)). A claim of ineffective assistance of

counsel not raised on direct appeal may still be raised in a proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 509 (2003); Richardson v. United States, 379 F.3d 485, 487 (7th Cir. 2004).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To succeed on his claim of ineffective assistance of counsel, Mr. Barker must show, first, that his attorney's performance was deficient — "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" — and second, that counsel's deficient performance prejudiced his defense — "that counsel's errors were so serious as to deprive [the defendant] of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984); *see also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). A strong presumption exists that counsel performed effectively. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003). The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances." Kimmelman v. Morrison, 477 U.S. at 381. "Even if counsel's performance was deficient, a petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different,' meaning 'a probability sufficient to undermine confidence in the outcome.'" Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (*quoting* Strickland v. Washington, 466 U.S. at 694). "In weighing the effect of counsel's errors, the court must consider the totality of the evidence . . . . A verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." Eckstein v. Kingston, 460 F.3d at 848 (*quoting* Hough v. Anderson, 272 F.3d 878, 891 (7th Cir. 2001)).

Mr. Barker's claim of ineffective assistance of counsel is premised on his claim that counsel didn't effectively object to or challenge — at trial and on appeal — the determination that he (Mr. Barker) possessed a machine gun "in furtherance of" a drug trafficking crime under 18 U.S.C. § 924(c) without a showing that Mr. Barker "used the unloaded, inoperable machine gun with greater participation in the commission of the crime charged." While Mr. Barker is correct that "mere possession of an unloaded, inoperable machine gun is insufficient under § 924(c)," Petn., at 5, the court can't agree that the government was required to prove that he used the firearm "with greater participation" in the commission of the crime charged. *Id.*

Count 3 of the indictment charged Mr. Barker with violating 18 U.S.C. § 924(c) by knowingly and intentionally possessing firearms in furtherance of a drug trafficking crime, "specifically, the knowing and intentional manufacture of a Schedule I controlled substance, to wit: marijuana in an amount of 100 or more

marijuana plants." *See* Indictment [docket # 16]. "Thus, the question in this case is whether the [machine gun] helped further the [manufacture] and future distribution of those drugs . . . ; it is not whether the [machine gun] helped to further or facilitate some specific transaction." United States v. Castillo, 406 F.3d 806, 816 (7th Cir. 2005).

The evidence introduced at trial established that when police searched the home of Ronald and Christine Barker (his wife and co-defendant) in June 2006, they discovered 348 marijuana plants (inside and outside the house), grow lights, fans and blowers, scales, a vacuum sealer, marijuana seed catalogs, plastic bags containing processed marijuana, plastic bags containing miscellaneous drug paraphernalia, thirty-seven loaded and unloaded firearms, including an unloaded Sten machine gun, and loaded magazines of ammunition. Drugs, guns, and ammunition were found in the home's basement, bathroom, laundry room, kitchen (including the refrigerator), living room, dining room, master bedroom, furniture drawers, and closets; a loaded assault rifle was found right inside the front door; and the machine gun was found next to a fully loaded magazine. DEA Special Agent John Spangenberg testified that Mr. Barker told him he had been growing and cultivating marijuana for 19 years, had installed an electric gate to monitor who was coming up to his property, and used the guns to protect his marijuana grow operation. Trial Tr., pp. 69-71.

The evidence presented by the government at trial was more than sufficient to tie the machine gun to the Barkers' drug-manufacturing conspiracy and to the

protection of its owners, Ronald and Christine Barker. The machine gun was located in the Barkers' growing headquarters within close proximity of numerous rounds of ammunition. Also found in the Barkers' home was processed marijuana, marijuana plants, and implements used in a marijuana grow operation. "A possessed gun surely can further a drug conspiracy by providing protection, and to hold otherwise would thwart Congress' purpose of countering the dangerous mix of guns and drugs." United States v. Duran,407 F.3d 828, 841 (7th Cir. 2005) (*citing* Muscarello v. United States, 524 U.S. 125, 132 (1998) (explaining § 924(c)(1)(A)'s purpose in those terms)). Based on the evidence, the jury could have reasonably concluded that Mr. Barker was a drug manufacturer, that the machine gun kept in his home was in close proximity to his drug operation, and that the machine gun "was possessed to further the possession and future distribution of those drugs by being available to protect [Mr. Barker], his drugs, and his drug [growing] business." United States v. Castillo, 406 F.3d 806, 817 (7th Cir. 2005); *see also* United States v. Luciano, 329 F.3d 1, 6 (1st Cir. 2003) ("Given the close proximity of the firearms and loaded magazines to the significant stockpile of heroin, we have no difficulty concluding that there was a sufficient nexus between the drug trafficking crime and the firearms to sustain a conviction under § 924."); United States v. Suarez, 313 F.3d 1287, 1293 (11th Cir. 2002) ("[C]onsidering (1) the fact that Sicard's house was the major initial storage point of all the cocaine brought in from Mexico; (2) the type, location, and condition of the weapons at issue; and (3) the amount of drugs to be stored in his house, the jury could

reasonably have inferred that the guns were to be used to protect the conspirators' investment in their shipment."); United States v. Ceballos-Torres, 218 F.3d 409, 415 (5th Cir. 2000) ("The weapon was loaded and easily accessible in Ceballos's apartment, and . . . it was possessed in the apartment along with a substantial amount of drugs and money. Together, these factors reasonably support a finding that Ceballos's gun protected his drugs and money against robbery."); United States v. Gonzalez, 93 F.3d 311, 318-319 (7th Cir. 1996) ("'Use' also includes . . . the silent but obvious and forceful presence of a gun on a table, for those active employments are intended as threats or coercions calculated to bring about the narcotics transaction." (citation and internal quotation omitted)).

Mr. Barker hasn't identified any evidence to establish that his counsel failed to pursue a legitimate strategy at trial or on appeal, nor has he described how the outcome of his trial or appeal would have been different given the government's overwhelming evidence against him. "To prevail on a claim of ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice." Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001). Mr. Barker hasn't established that his counsel's performance, at trial or on appeal, fell below an objective standard of reasonableness or that he was prejudiced in any way by counsel's performance. Mr. Barker isn't entitled to the relief he seeks based on his claim of ineffective assistance of trial and appellate counsel, and his claim for relief must be denied.

IV.  CONCLUSION

Based on the foregoing, the court DENIES Ronald Barker's petition filed

pursuant to 28 U.S.C. § 2255 [dated August 18, 2008] [Doc. No. 113].

SO ORDERED.

ENTERED:   January 27, 2009

  /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court